## WILLIAM B. NASON *versus* LORENZO D. STAPLES.

Where a person accused of a crime is ordered by a Court of preliminary juris-
diction to recognize for his appearance at the proper tribunal for trial, and
neglects to do so, the mittimus is sufficient if it states that he was "convict-
ed" and ordered to recognize, instead of stating that it appeared that an of-
fence had been committed, and that there was probable cause to believe the
accused to be guilty.

Since the revision of the statutes in 1841, the writ *de homine replegiando* does
not apply to cases of persons held under legal process, that is to say, a writ
or warrant issuing from any Court, under color of law, however defective.

Persons restrained of their liberty, under color of process of law, have a speedy
remedy by writ of *habeas corpus*, and one much less onerous, because requir-
ing neither recognizance nor bond.

THIS was an action of PERSONAL REPLEVIN.

It appeared that the plaintiff, having been tried on a com-
plaint for adultery, before the Municipal Court for the city of
Biddeford, that Court ordered him to recognize in the sum of
$500 for his appearance before the proper tribunal for trial,
which he refusing to do, a mittimus was issued for him to be
committed to await his trial. The defendant, being Marshal
of the city, the mittimus was delivered to him, and, in pursu-
ance of its precept, he committed the plaintiff to jail.

On trial of this action, the defendant justified by virtue of
his said office, and the mittimus before named. The case was
tried before the Judge, APPLETON, J., reserving the right to
except. The Judge ruled that the justification was insufficient,
and gave judgment for the plaintiff. The defendant excepted.

*R. P. Tapley*, in support of the exceptions.

1. Every thing that it is necessary should appear in the mit-
timus appears there.

The Municipal Court of Biddeford is made, by the Act cre-
ating it, "a Court of record with a seal," and all the presump-
tions of law favorable to the proceedings of Courts of record
apply to it. It had jurisdiction of the offence charged, and
of the person of Nason, to examine and to hold to bail, and
this is what the Court did.

It is objected that it does not appear, by the mittimus, that the Court found that an offence had been committed, and that there was probable cause to charge Nason with it. But the mittimus declares that he was "convicted" on the complaint, &c., which is equivalent to stating, that all was proved that was necessary to be proved. The form was the same as used in cases of conviction of offences within the jurisdiction of the Court, but may be upheld as containing all that is necessary in this case.

The mittimus is not the judgment or record of the determination of the case by the Court, and need not contain all the particulars of the action of the Court, any more than an execution is required to contain all the particulars of the judgment or record in a civil case.

When a party is arrested on a warrant, and the examination, before being completed, is adjourned to another time, the prisoner is usually remanded into the custody of the officer by verbal order, and without any mittimus. This case is analogous.

It is enough for an officer, if the Court has jurisdiction of the offence and of the person, and if his precept is in proper form. It is not for him to inquire into the propriety or regularity of the previous action of the Court.

2. These objections are not open to the plaintiff in this process. By R. S., c. 101, a party is entitled to this process, unless, amongst other things, he is restrained by "force of a lawful writ, warrant or other process, civil or criminal, issued by a Court of competent authority." It was never intended that the validity of the original process should be tested on the writ of replevin. If it were so, every person accused of crime, both before and after conviction, and even convicts in the State prison, might resort to this process to procure a respite from restraint, whilst the legality of the restraint was litigated. A person in custody, and in danger of conviction, might resort to it to be set at liberty long enough to take leg bail.

The amount of bond is to be determined by the officer who

serves the writ. If insufficient, where is the remedy ? If on the officer's official bond, is that sufficient ? It cannot be that the criminal law can be evaded in such a manner.

The only safe construction is, that all precepts which a Court is authorized to issue, are excepted under the statute; that, whatever bears the form of a writ, warrant or other process, with the test or seal of the Court, is not subject to revision by such proceedings.

The writ of *habeas corpus* is the proper remedy in cases of improper restraint under color of judicial process. Under that process, the party is held in custody pending the inquiry. If, on inspection, the process, by which he is held, is erroneous on its face, he may be discharged. If the process does not disclose the error, but there is one preceding that process, a writ of *error* lies. In these modes, all his rights are preserved.

Under the general statutes, the amount of bail, and the sufficiency of it when presented, are to be determined by the Court that tries the offence. But, if a party ordered to furnish sureties, can cause himself to be replevied, he transfers the question, both of amount and sufficiency, to the officer serving the writ of replevin; in fact, withdraws all security from the State, and transfers it to the officer having the mittimus. The State is entitled to the custody of the person, or to a recognizance for his appearance; but, by this process, may be deprived of both.

By the constitution, certain offences are not bailable. But, if the offender may replevy himself, he may evade the constitutional provision, and go at large on such bail as an officer may require of him.

*J. M. Goodwin, contra.*

The defendant relies wholly upon the warrant of commitment, by virtue of which he claimed to have authority to arrest and detain the plaintiff, to maintain his defence.

We say the warrant in this case gave no authority, was null and void; and, therefore, the defence fails.

"A magistrate's warrant of commitment must show his jurisdiction to issue it." *Gurney* v. *Tufts*, 37 Maine, 130.

"As the jurisdiction of justices of the peace is given and limited by particular statutes only, and nothing can be presumed in favor of such jurisdiction," the warrant should show that due and legal proceedings had been had to authorize the magistrate to order the commitment. *State* v. *Hartwell*, 35 Maine, 129.

"To authorize a magistrate" to order the commitment "of . an accused person, to answer before a Court of superior jurisdiction for an alleged offence, the punishment of which is beyond the jurisdiction of such magistrate, it is necessary that it should appear that an offence has been committed, and that there is probable cause to believe the prisoner to be guilty." R. S., c. 133, § 11; *State* v. *Hartwell*, 35 Maine, 131.

"Until these facts are made to appear, on an examination before a magistrate, on process issued in due form of law, there is no authority on the part of the magistrate to require bail." *State* v. *Hartwell*, 35 Maine, 131.

Where there is no authority to require bail in case of a bailable offence, there can be no authority to commit for want of bail; and it is only when no sufficient bail is offered that the magistrate is authorized to commit to await a trial. R. S., c. 133, § 11.

Now, in this case, the magistrate did not find that the crime of adultery had been committed, either within his jurisdiction or elsewhere. Nor did he find that there was probable cause to believe the prisoner guilty. Therefore it does not appear that the magistrate had authority to require bail, and, *a fortiori*, is his authority not shown to commit for want of bail.

In other words, it may be said that the warrant of commitment, in this case, does not show the jurisdiction of the magistrate to issue it, and it is therefore void.

The opinion of the Court was drawn up by

DAVIS, J.— This case is not analogous to that of *State* v. *Hartwell*, 35 Maine, 129. There the mittimus merely set out

that the magistrate had reason to suspect the accused to be guilty. Here it is alleged that the accused, upon his hearing, had been "convicted" of the offence. Though the magistrate had no authority to sentence, he had authority to try the case. He required the accused to plead to the charge; and, upon that plea, after the hearing, he *convicted* him. "Conviction" is an adjudication that the accused is guilty. It imports all that the statute requires before holding one to bail, *and more.* It involves not only the *corpus delicti,* and the *probable* guilt of the accused, but his *actual* guilt. I think the mittimus sufficient.

But if not, I am satisfied that the plaintiff's remedy is not by the writ *de homine replegiando,* but that he should have applied for a writ of *habeas corpus.*

I am aware that a writ of personal replevin was sustained by this Court in the case of *Gurney* v. *Tufts,* 37 Maine, 130; and the opinion in that case, in regard to what is requisite in a warrant, in order to justify the officer in executing it, is clearly correct. No other question was raised in the argument. The attention of the Court was not called to the fact that the statute was entirely changed by the revision of 1841; and it is not strange that it should have been overlooked.

The writ of personal replevin was provided for by statute in 1787. 1 Laws of Mass., 361. That was reënacted in this State, at the time of our separation. Laws of 1821, c. 66. By that statute, persons held upon criminal process, (with various exceptions, including all offences not then bailable,) when such persons were not under sentence, were entitled to the writ. So all persons held upon civil process, unless held in execution upon judgment, or by distress for taxes, were entitled to the writ; and all persons held in duress without any process. If the person applying for the writ was held to answer upon any *criminal* process, before he could be delivered, he was required to recognize, with sufficient sureties, for his appearance, "to answer, abide, and perform the order and sentence of the Court." If held upon *civil* process,

(which was restricted to *mesne* process,) or, if held without process, he was required to give bond to the defendant.

These provisions, except for persons held *without any process*, were found to be needless. Persons restrained of their liberty without cause had a speedy remedy, much less onerous in that it required no recognizance or bond, by a writ of *habeas corpus.* So that there is not a single case reported, in this State or in Massachusetts, where a person held upon legal process, either civil or criminal, ever applied for the writ. For these reasons, doubtless, when the statutes were revised in 1841, all the provisions for this writ, except in behalf of persons held without any process, were carefully omitted. That it was then intended to abolish or discontinue the writ in all cases where the person was held upon any process, either civil or criminal, is evident for the following reasons.

The exception embraces all such processes. No person is entitled to this remedy who is held upon " a lawful writ, warrant, or other process, civil or criminal." The term " lawful" does not mean legally sufficient, but is the same as *legal process,* or *process of law.* A writ, or warrant, issuing from any Court, under color of law, is a legal process, however defective.

The original statute excepted persons held upon *final* process, either civil or criminal; and also persons held to answer for offences not bailable. There is no such exception in the statute of 1841. If *any* one held upon legal process is entitled to the writ, *every* one is, whether the process is *mesne* or *final;* whether he is held *to answer* to a criminal charge, or is *under sentence;* whether the offence is bailable, or not. Such could not have been the intention of the Legislature.

This view is confirmed by the fact that, in the revision of 1841, all provisions for a *recognizance* were stricken out. It cannot, therefore, apply to a *criminal* case. Nothing is required but a *bond,* as in replevin for chattels.

And the cases of custody enumerated in section *seven,* R. S., 1857, c. 101, show that it was not intended for persons held

upon civil process. The words "or otherwise" imply cases of a similar nature to that of "child, apprentice, or one under bail." The statute would apply to a seaman, or to a soldier. *Hutchins* v. *Van Bokkelen,* 34 Maine, 126. But, to apply it to one in custody upon legal process, under the provisions of the present statute, would endanger important public and private rights and interests, without any possibility of redress. *Exceptions sustained.*

TENNEY, C. J., APPLETON, CUTTING and GOODENOW, JJ., concurred.